UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| **TERRY LYNN HILL,**<br><br>　　**Plaintiff,**<br><br>**V.**<br><br>**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　**Defendant.** | **CIVIL ACTION NO. 7:13-142-KKC**<br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

　　This matter is before the Court for consideration of cross-motions for summary judgment. (DE 13; DE 14). Plaintiff Terry Lynn Hill brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Social Security Disability Insurance Benefits ("DIB"). The Court having reviewed the record will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

**I. OVERVIEW OF THE PROCESS**

　　The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

>4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
>5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Hill filed his claim for DIB on February 24, 2011, alleging an onset date of July 7, 2010. (Tr. at 160.) The agency denied his application initially and on reconsideration. (Tr. at 75, 90.) Hill requested review by an ALJ, and the ALJ held a hearing on January 23, 2013. (Tr. at 36–65.) The ALJ subsequently issued an unfavorable decision on February 12, 2013. (Tr. at 20–31.)

At the time the ALJ rendered her decision, Hill was fifty-seven years old. He has an eighth-grade education and previously worked as an equipment operator and mine mechanic in the coal-mining industry. (Tr. at 44, 59.) The vocational expert ("VE") characterized Hill's past work as "skilled employment." (Tr. at 59.) Hill alleges disability due to depression, left

rotator cuff surgery, gall bladder removal, high blood pressure, acid reflux, and weak vision. (Tr. at 66.) His insured status expires on September 30, 2015. (Tr. at 25.)

At the first step, the ALJ determined that Hill has not engaged in substantial gainful activity since his alleged onset date of July 7, 2010. (Tr. at 25.) At the second step, the ALJ found that Hill suffers from the following severe impairment: "status-post left rotator cuff repair with degenerative arthritis." (Tr. at 25.) The ALJ found that the other alleged severe impairments were adequately managed with medication or lacked evidence of a diagnosis or treatment. (Tr. at 26–27.) Overall, the ALJ noted that the other alleged impairments lacked "evidence [that they] cause[] significant work related limitations at this time." (Tr. at 26–27.) At the third step, the ALJ concluded that Hill does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 27.)

Next, the ALJ reviewed the record to determine Hill's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1). In finding Hill's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Hill and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical

3

specialization; and other opinion evidence. 20 C.F.R. § 404.1527; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ determined that Hill has the following RFC:

> [He can] lift and carry 50 pounds occasionally, 25 pounds frequently; push and pull to weight limits; sit for six hours total out of an eight hour workday; stand and walk for six hours total out of an eight hour workday; cannot lift left arm overhead; can lift left arm to shoulder level frequently; occasionally climb ladders, ropes, and scaffolds; frequently stoop, crouch, kneel, and crawl; must avoid concentrated exposure to hazards such as unprotected heights, dangerous moving machinery, uneven surfaces, and large bodies of water; and must avoid even moderate exposure to concentrated vibration; must avoid concentrated exposure to extreme cold temperatures, humidity, and dampness; and cannot perform jobs that require reading instructions and writing reports.

(Tr. at 27.) The ALJ noted that Hill's RFC is in the "range of medium work" but is "impeded by additional limitations." (Tr. at 30.) The ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Hill's education, experience, and RFC could perform any of Hill's previous jobs. (Tr. at 60.) The VE testified that this hypothetical individual could not perform Hill's past work. (Tr. at 61.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs available in the regional or national economy, and the VE stated that this hypothetical individual could perform the following jobs: assembler, kitchen worker, laundry worker, bakery work, and fast food worker. (Tr. at 61.) Therefore, the ALJ found Hill not disabled. (Tr. at 31.)

The ALJ's decision that Hill was not disabled from July 7, 2010 through February 12, 2013 became the final decision of the Commissioner when the Appeals Commission subsequently denied Hill's request for review on May 31, 2013. (Tr. at 6–8.) Hill has exhausted

4

his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). "'The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision[ ]makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### IV. ANALYSIS

Hill presents a number of issues for review; however, the Court finds that there are only three distinct claims: (1) The ALJ failed to properly evaluate the medical opinion evidence; (2) The ALJ did not consider the combined effect of Hill's impairments; and (3) The ALJ did not properly analyze Hill's medical-vocational profile. (*See* DE 13-1 Pl.'s Mem. at 1–4.)

    1. *The ALJ did not err in evaluating the medical opinion evidence.*

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Medical source evidence is evaluated by the process set forth in 20 C.F.R. § 404.1527(c). This regulation states

that the Commissioner should weigh medical opinions according to the following factors: (1) whether the physician examined the claimant ("examining physician"); (2) whether the physician regularly treats the claimant and has an ongoing treatment relationship ("treating physician"); (3) whether medical evidence supports the physician's opinion ("supportability"); (4) whether the physician has provided consistent opinions concerning a claimant's alleged disabilities ("consistency"); (5) whether the physician is a specialist in the field related to the claimant's alleged disabilities ("specialization"); and (6) other factors evident in the medical records ("other factors"). *Id.*

It is well established that opinions from examining physicians generally receive more weight than opinions from non-examining physicians. *Id.* § 404.1527(c)(1). Likewise, under the "treating physician rule," the ALJ generally must give a treating physician's opinion significant weight. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). But neither an examining physician's opinion nor a treating physician's opinion can receive significant weight if the opinion is not supported by relevant medical evidence. *See* 20 C.F.R. § 404.1527(c)(3); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013).

The ALJ also assesses the amount of detail provided in each medical opinion. *See* 20 C.F.R. § 404.1527(c)(3). A medical opinion that lacks detail may be properly discounted. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009). Additionally, "[c]onclusory statements from physicians are properly discounted by ALJs." *Id.*

After reviewing a medical opinion under the § 404.1527(c) factors, the ALJ must discuss the weight given to a treating-source opinion and provide her rationale for giving that amount of weight. *Gayheart*, 710 F.3d at 376. Her rationale must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not, however, need to provide a lengthy rationale. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

Finally, in addition to assessing the appropriate amount of weight to give to treating- and examining-source opinions, the ALJ "may not ignore" the medical opinions of non-examining state agency physicians and "must explain the weight given to the[se] opinions." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996); *see also Blakley*, 581 F.3d at 408–09. "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, at *3. One such circumstance may occur, for example, when the state agency consultant's opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

### A. Dr. Mukherjee

Dr. Sudhideb Mukherjee analyzed Hill's complete case record and provided a non-examining state agency physician opinion on September 26, 2011. (Tr. at 79–90.) Dr. Mukherjee's opinion was based on a review of medical records and reports from Hill, Dr. Grady Stumbo, Appalachian Regional Medical Center, Story Consulting Services, Saint Joseph – Martin Health Services, and McDowell Appalachian Regional Hospital. (Tr. at 80–83.) Specifically, these records included specialized opinions from Hill's surgeons, pathologists, and radiologist. (*See* Tr. at 260–67, 292–94, 295–97, 298–311, 322–24, 327–30, 362, 386; *see also* SSR 96-6p, at *3.)

Dr. Mukherjee then opined that Hill has the RFC to perform medium work with limitations. (*See* Tr. 85–88.) The ALJ discussed Dr. Mukherjee's findings and gave his opinion "great weight" because the ALJ found the opinion "consistent with the overall record." (Tr. at 29.)

The ALJ properly analyzed Dr. Mukherjee's opinion under the Social Security Rulings and Regulations. The ALJ determined whether Dr. Mukherjee's opinion was supported by objective medical evidence, consistent with the record evidence, and included the findings of medical specialists. Therefore, the ALJ's treatment of Dr. Mukherjee's opinion evidence is supported by substantial evidence and applies the correct legal standards. *See Blakley*, 581 F.3d at 408–09; 20 C.F.R. § 404.1527(c); SSR 96-6p, at *3.

### B. Dr. Barefoot

Dr. Jules Barefoot examined all of the record evidence, performed a consultative examination on Hill, noted Hill's physical capabilities, and opined that Hill's physical condition did not preclude medium work. (*See* Tr. at 397–403.) The ALJ discussed Dr. Barefoot's findings and gave his opinion "great weight" because the ALJ found the opinion supported by objective medical evidence, consistent with the record evidence, and well explained. (Tr. at 29.)

The ALJ properly analyzed Dr. Barefoot's opinion. He was an examining physician. (Tr. at 397–403.) Dr. Barefoot specifically tested Hill's range of motion, residual strength, and treatment record. (*See* Tr. at 399–403.) Further, the ALJ noted that Dr. Barefoot's opinion was supported by objective medical evidence and consistent with the record evidence. (Tr. at 29.) As an examining-source opinion that is supported by the record evidence, the ALJ did not err in determining that Dr. Barefoot's opinion should receive "great weight." 20 C.F.R. § 404.1527(c). Accordingly, the ALJ's treatment of Dr. Barefoot's opinion evidence is supported

8

by substantial evidence and applies the correct legal standards. *See Gayheart*, 710 F.3d at 375–76; 20 C.F.R. § 404.1527(c).

### C. Dr. Stumbo

Dr. Grady Stumbo is a family physician and has treated Hill for more than ten years. (DE 13-1 Pl.'s Mem., at 5.) Dr. Stumbo completed a check-box RFC evaluation form; however, he did not provide any medical evidence to support his RFC findings. (*See* Tr. at 442–45.) His RFC finding stated that Hill could only lift or carry up to ten pounds occasionally, could not lift or carry *any* amount of weight frequently, could only stand or walk less than three hours in an eight-hour day, could sit less than three hours in an eight-hour day, and had a limited ability to push and pull. (Tr. at 445.)

The ALJ discussed Dr. Stumbo's objective clinical findings related to his continued treatment of Hill and analyzed Dr. Stumbo's RFC. (Tr. at 29.) The ALJ expressly found that Dr. Stumbo's RFC finding deserved "little weight . . . because it is not supported by any objective evidence or explanation." (Tr. at 29.) Notably, Dr. Stumbo's check-box RFC assessment asserted that Hill only had the bare minimum capabilities for *every* basic strength factor without reference to *any* medical evidence. (Tr. at 445.)

The ALJ properly analyzed Dr. Stumbo's medical opinion. The ALJ noted that Dr. Stumbo is a treating-source physician, declared the amount of weight given to Dr. Stumbo's opinion, and provided a rationale for giving Dr. Stumbo's opinion "little weight." *See Gayheart*, 710 F.3d at 375–76. The ALJ's rationale for giving Dr. Stumbo's opinion "little weight" was not lengthy; but the ALJ provided a sufficient explanation to make clear to subsequent reviewers the weight she gave to the treating source's opinion, especially because Dr. Stumbo's findings did not cite any supporting medical evidence. *See Norris*, 461 F. App'x at 440; SSR 96-2p, at *5. Therefore, the ALJ's treatment of Dr. Stumbo's medical opinion evidence is supported by

substantial evidence and applies the correct legal standards. *See Gayheart*, 710 F.3d at 375–76.

   *2. The ALJ did not fail to consider the combined effect of Hill's impairments.*

The ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "But 'an ALJ's individual discussion of multiple impairments does not imply that she failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet' a listed impairment." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (alterations omitted) (quoting *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990)).

Here, the ALJ individually discussed every alleged impairment. (Tr. at 25–29.) Additionally, the ALJ specifically found that Hill "does not have an impairment <u>or combination of impairments</u>" that were of sufficient severity. (Tr. at 27 (emphasis added).) Therefore, the ALJ met her burden in considering the combined effect of all of Hill's impairments, and the ALJ's decision is supported by substantial evidence and applied the correct legal standards. *See Hill*, 560 F. App'x at 551.

   *3. The ALJ properly analyzed Hill's medical-vocational profile.*

A medical-vocation profile may conclusively establish that a claimant cannot make an adjustment to other work. *See* 20 C.F.R. § 404.1562. Pursuant to § 404.1562, a claimant is considered disabled if "he (1) has done only arduous unskilled physical labor; (2) has no more than a marginal education; (3) has work experience of thirty-five years or more; and (4) is not working and is no longer able to do this kind of work because of severe impairment(s)." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011). But here, the analysis stops at the

first step because the VE noted that Hill's prior work experience qualified as skilled employment. (Tr. at 59.) Section 404.1562 does not apply to Hill. Therefore, the ALJ's decision is supported by substantial evidence and applies the correct legal standards. *See Parks*, 413 F. App'x at 865; 20 C.F.R. § 404.1562.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 13) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 14) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated March 27, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY